ELLIS, Judge.
The plaintiff is suing as the- subrogee of one Floyd Bennett who owned a 1946 one and one-half ton Ford truck which was involved in a collision with a tractor and grader owned by the T. W. Kleinpeter Construction Company, Inc., one of the defendants herein, oh September 4, 1947 at about 1:30 P.M. while being operated by Harold Bennett, son o'f the owner, and which was damaged to the extent of $947.-49. The policy of insurance which the plaintiff carried on this'truck provided for $100.00 deductible, and, therefore, it had paid to the owner of the truck $847.49 which it now seeks to recover from the defendants.
The plaintiff filed a supplemental and amended petition in which it plead that in the event the Court should find the driver of the truck to have been contributorily negligent, then it alleged that E. E; Davis, the driver of the tractor grader had the last clear chance to avoid the accident under certain facts as alleged.
To the original' and supplemental and amended petition the defendants filed an exception of no right or cause of action on the ground that the suit was for only a •portion of the amount of damages alleged and,’ in the alternative and in the event the Court held that the plaintiff had a right and cause of action for only a portion of the damages, alleged to have been caused by the accident, then, as the suit is based on an alleged assignment by plaintiff’s assured, that the petition set forth no right or cause of action for the reason that there was no allegation that the defendants were timely notified of such assignment or consented to it.
The judge of the lower court referred these exceptions to the merits and on November 9, 1948 the defendants filed answer admitting the accident but denying liability and particularly denying that the caterpillar tractor grader was owned by T. W. Kleinpeter, and denying that E. E. Davis, driver of the tractor, was the agent or employee of T. W. Kleinpeter. By way of explanation, plaintiff’s original petition alleged that T. W. Kleinpeter was the owner of the tractor grader and that E. E. Davis, the operator of same, was his agent and employee. The defendants further answered and plead in the alternative Contributory negligence on the part of Harold Davis, the driver of the truck, which' defendants alleged was imputable to -the plaintiff. Defendants further plead in the , alternative that the driver of the truck had the last clear chance to avoid the accident.
On November IS, 1948 the plaintiff filed a supplemental and amended petition in which it asked that Floyd S. Bennétt, owner of the truck, be made a party to the suit in order, to assert his interest if any, and to meet the objection made by the defendants by way of exception of no cause or right of action, and further alleged that on November 3, 1948 it had learned for the first time that the defendant, T. W. Kleinpeter, individually, was not’ the 'owner of the tractor grader involved in the collision, nor individually the. employer of the codefendant, E. E. Davis, and that on November 9th, 1948 counsel for plaintiff learned for the first time that such a defense to the suit would, in fact, be urged. Plaintiff further alleged that said T. W. *389 Kleinpeter was one of 'the'two designated registered agents for the corporation and his official address as such and the address of the registered office of the corporation were one and the same and it was at such address that domiciliary service was had on the said Kleinpeter through his wife on July 22, 1948, and that counsel on November 3,, 1948 had contacted the office of the Secretary of State of Louisiana and was advised that T. W. Kleinpeter Construction Company, Inc., did exist and was domiciled in East Baton Rouge Parish, Louisiana, with T. W. Kleinpeter then and at the time of the filing of the supplemental, petition as its President and its principal stockholder, “no one exceeding his stock ownership.” Plaintiff further set forth that it had considerable correspondence prior to the filing of the suit in which it was evident and it understood that T. W. Kleinpeter, individually, was thé owner of the tractor grader and employee of Davis, and that instead of denying this relationship, Kleinpeter, president of the corporation and its agent in the premises, lulled the plaintiff into assuming plaintiff’s belief correct, and in support of this allegation plaintiff annexed to and made a part of its petition certain correspondence. Plaintiff asked to amend its original and prior supplemental' petition so as to substitute the T. W.- Kleinpeter Construction Company, Inc., for T. W. Kleinpeter as the party ■ defendant, and secured a rule against the defendant to show cause why the prayer of its petition should not be granted. ■
To this rule the defendants filed an exception of no right or cause of action, and with reservation of all the rights under the exception denied the main allegations of plaintiff’s petition and admitted that Kleinpeter was one of the registered agents of defendant, and his address, as such,, as well as the address of the office of the corporation, were the same and also the same address at which the service of the original petition was made.
The judge of the lower court ‘ overruled the exceptions and made the rule absolute and permitted the plaintiff to substitute the name of T. W. Kleinpeter Construction Company, Inc,, for the name T. W. Klein-peter wherever it appeared in the original or prior supplemental petition.
The T. W. Kleinpeter.Construction Company, Inc., filed ¿nswer to plaintiff’s original and supplemental petitions which is practically the same as the answer which had been filed by T. W. Kleinpeter, individually, and plead in the alternative that the driver of the dump truck had the last clear chance to avoid the accident and also plead contributory negligence on the part of the driver of the truck as the cause -of the collision, and alleged that such negli•gence was imputable to the plaintiff.
On February 12, 1949 Floyd Bennett, the owner of the truck, through the same counsel who represented plaintiff, filed suit for the $100.00 which was deducted under the terms of the insurance policy, to which petition defendants plead the prescription of one year. This plea was referred to the merits and defendants accordingly answered setting up the same defenses previously made.
After trial, the judge of the District Court rendered judgment in favor of the plaintiff and against the defendants, jointly and in solido, as prayed for, and further rendered judgment sustaining the ,plea of prescription of one year to the claim of Floyd S: Bennett, and it is from this judgment against them from which the defendants have appealed/' There was no appeal taken from the judgment dismissing the claim of Floyd S. Bennett.
Counsel for defendants again strenuously urges that the lower court was in error in allowing the plaintiff to substitute the name of T. W. Kleinpeter Construction Company, Inc., a private corporation organized and' doing business under the' laws of Louisiana and with' its domicile in the parish of East Baton Rouge, for the name T. W. Kleinpeter on the ground that at the time the Court allowed this amendment the case was at issue, both ■ exceptions and answers on the merits had been filed, and the- case was ready for trial, and that no such amendment may be made after issue has been joined, and he relied upon the *390 cases of Elfer v. Mintz, La.App., 7 So.2d 416, and Diamond T. Motor Trucks, Inc. v. Heck, La.App., 13 So.2d 512, 513.
The Elfer case, supra, decided by the Circuit Court for the Parish of Orleans, was one in which the plaintiff sued two individuals, alleging that they were members of a partnership, to which petition there were filed exceptions of misjoinder, proper parties and no cause or right of action. The exception was based upon the ground that the members of the partnership could not be sued on a partnership debt during the existence of the partnership unless the partnership was joined. The judge of the lower court maintained the exception of no cause or right of action which plaintiff conceded was proper, but contended that the lower court should have allowed him to amend his petition so as to make the partnership a party defendant. The court sustained the lower court and, in effect, held that to allow such an amendment would be permitting the plaintiff to implead a new party defendant previously a stranger to the proceeding.
The case of Diamond T. Motor Trucks, Inc. v. Heck, supra, was one in which the plaintiff filed a supplemental and amended petition in which it averred:
“* * * that it had erroneously made Mike Heck, Sr., defendant under the belief that he, individually, owned and operated the business but that it had discovered that the correct defendant should have been the corporation bearing the name ‘Mike Heck Delivery Service, Inc.’
“In the supplemental petition plaintiff repeated verbatim the allegations of the original petition and prayed that the judgment which it sought be rendered against the said corporation instead of against Mike Heck, Sr., individually, as originally prayed for.”
Judge Janvier as organ of the Court further stated:
“Whether such an amendment as that which is objected to here, in which there is substituted a new defendant for the defendant named in the original petition, may be filed depends upon whether, at the time of the filing of the amendment, issue has been joined. After issue has been joined, a plaintiff, even with leave of court, may file an amendment only if it ‘does not alter the substance of his demand by making it different from the one originally brought.’ C.P. art. 419.
“Such a change as that made here may not be made if issue has been joined. Elfer v. Mintz et al., La.App., 7 So.2d 416; Levin v. Missouri Pac. R. Co., La.App., 2 So.2d 99; Garland v. Keen, 18 La.App. 652, 139 So. 54; Rex Credit Co. v. Alana et al., La.App., 145 So. 19; Curacel v. Coulon, 2 Mart., O.S., 143.”
While it was recognized that after issue has been joined plaintiff with leave of the court may file an amendment if it “does not alter the substance of his demand by making it different from the one originally brought” (Art.C.P. 419) it stated that in the Diamond T. Motor Truck case issue had not been joined and the amendment was proper.
Judge, now Justice, McCaleb, who was a member of that Court when the Diamond T. Motor Trucks, Inc. v. Heck case, supra, was decided, gave a concurring opinion in which he stated:
“Amendments are favored in the law and should be permitted where they work no injustice upon the parties sued. Accordingly, I think it proper and fully authorized by Article 419 of the Code of Practice to permit the joinder of a necessary party defendant by supplemental petition (provided the substance of the original demand is not changed), even though the case is at issue as to other defendants.
“For these reasons, I respectfully concur.”
The same question was presented to our brethern of the Orleans Court of Appeal in the case of Brocato v. T.S.C. Motor Freight Lines, 22 So.2d 480, 483, and they expressly adopted the views expressed in the concurring opinion in the Diamond T. Motor Trucks, Inc. v. Heck, supra, as follows : “There were other defendants against whom a solidary judgment was sought and it would be requiring plaintiff to undergo entirely unnecessary expense and delay to force him to dismiss the suit *391 entirely and to then commence the action all over again. Our views on this question do not seem to he consistent with those expressed in Elfer v. Mintz et al., La.App., 7 So.2d 416. But we find ourselves unable to agree with what was there said and with the conclusion there reached. On the contrary, we find that our present views are in accord with those expressed in the concurring opinion in Diamond T. Motor Trucks, Inc. v. Heck, La.App., 13 So.2d 512. In holding that plaintiff was within his rights in filing the supplemental petition, and in making Lewis and his insurance carrier parties defendant we adopt the reasons set forth in that concurring opinion. It is thus unnecessary that we consider whether the exceptions came too late or whether they, in fact, presented the issue which counsel says they presented.”
In the present case the amendment did not alter the substance of plaintiff’s demand by making it different from the one originally brought and defendant’s objection on this ground is not well taken.
Defendants further contend that the amendment allowing a new defendant, the corporation, to be brought into the case after the lapse of one year should not have been allowed as any claim against the corporation at that time, had prescribed. Counsel argues that: “T. W. Kleinpeter may be a stockholder or even an officer in the T. W. Kleinpeter Construction Co., Inc., but there is no evidence that he is. He may own one share or dozens in the corporation. That is not of any importance. Counsel argued and the Lower Court seemed to take the view that just because T. W. Kleinpeter was one of the registered agents of the corporation, the original petition brought the corporation into Court for all intents and purposes. This is not the law. * * * ”
It is true that there is no note of evidence in the record taken on the trial of the rule on its merits, however, the minutes of the Nineteenth Judicial District Court, Division C, Hon. Carlos G. Spaht, judge presiding, of Friday, December 17th, 1948, in part show: “And after hearing pleadings, evidence and argument of counsel upon the merits of the rule, the court did on December 13, 1948, in addition to overruling the exceptions as above, made said rule absolute in part, * * * ” (Emphasis added.)
Thus, in addition to the fact that the minutes show that there was evidence taken on the rule when it was tried on its merits, the District Judge in his written reasons for judgment stated:
“The defendants objected strenuously to the allowance of this change in the plaintiff’s pleadings, but the court, after due hearing, ruled that the amendment could be made for the reason that it was shown that T. W. Kleinpeter was the principal owner of the T. W. Kleinpeter Construction Company, Inc., was its president and active manager, as well as its registered agent and had been served with all the previous pleadings and had furthermore inadvertently misled plaintiff into believing he individually owned the equipment in question.
“The importance of allowing the amendment to the pleadings lay in the fact that more than a year had elapsed after the accident and the time defendant, T. W. Kleinpeter Construction Co., Inc., became a party to the suit. The court believes that it was correct in its ruling under the jurisprudence established in the cases of Broussard v. Missouri Pac. Railroad Co., 47 F.Supp. 750; Jackson v. American Employers Insurance Company, 202 La. 23, 11 So. 2d 225; Lunkin v. Triangle Farms, Inc., 208 La. 538, 23 So. 209; and Bowerman v. Pacific Mutual Insurance Company, 212 La. 999, 34 So.2d 53.”
In view of the fact that the evidence taken on the trial of the rule is not in the record, we accept the statement made in the minutes that evidence was taken and the statement of the trial judge in his written reasons that certain facts were shown as stated therein and upon which he based his ruling.
We see no need in analyzing the cases relied upon by the trial court and believe it only necessary to state that in our opinion under the facts found by the trial judge as shown in his written reasons and in view of the correspondence attached to *392 plaintiff’s supplemental and amended petition these- cases are good authority for his ruling, and that his ruling was correct in that prescription had been interrupted.
We see no reason why we should not use the findings of fact as made by the trial judge as we believe same to be substantially correct. They are as follows:
“The evidence discloses that the accident in question happened on September 4, 1947, on the Delhi-Winnsboro Road at a point approximately three miles south of Delhi, Louisiana, at a time when that road was under construction. The defendant,.T. W. Kleinpeter Construction Company, Inc., had a contract to do some repairs to that particular road which consisted primarily of widening the Shoulders to the road. In carrying out this contract it was in the process of pulling dirt from the ditches onto the shoulders of the road. This work is called ‘pulling the ditches.’ On the day in question E. E. Davis was the operator' of the tractor-grader" engaged in 'this part' t>f the work and on this day he had proceeded'first southward along the westward shoulder of the said road, to a point just below where the accident occurred. At this- point he turned'around and was headed back northward towards Wihnsboro. The accident occurred at a- point where there was a cub vert- crossing the road and on ea'ch end of which are what are called bulkheads which are of cement construction, as'is the culvert, and come up above the level of the road twelve to fourteen inches. The bulkheads on this particular culvert were in closer than the shoulders and are estimated by various people to be 20 to 22 feet from one to the other. As the tractor-grader came northward it was necessary for it to pull out of the ditch and onto the highway and go around this culvert before putting the grader back down into the ditch. In pulling the ditches the tractor ordinarily stayed on the edge of the road and on the shoulder thereof while the grader goes down into the ditch. It does this by means of a tongue which is crooked to such an extent that the grader follows along som'ewhat to the right of the tractor. The tractor was of the caterpillar type which is approximately eight feet or a little more in'width and it was necessary in crossing the culvert for the tractor to pull out into the road to the driver’s left to a point where the grader would pass to the left of the bulkhead on the driver’s right. From this description of the tractor-grader it is obvious that the tractor would be beyond the center of the road as the grader was negotiating the culvert. The court estimates that it would cover approximately two thirds of this particular road. There is no dispute at the time of the accident that there were weeds along the shoulder of the road which more or less obscured these bulkheads sticking up above the road;”
' “The Bennett truck was being driven by Harold R. Bennett going southward with á load of gravel weighing about 19,000 pounds. The truck was traveling along this road at a speed estimated by the driver of 25 miles per hour. As he was going southward he turned to the right to go around the tractor-grader in its northward movement, but failed to completely clear it and first, struck the tractor and then struck the bulkhead on western side of the road, causing the damages to the truck herein sued for. The rear wheels of the truck were jerked from under'it and it went on for approximately ten feet and turned over on the western side of the road.”
“There is considerable dispute in the testimony of the driver'of the truck and the driver of the tractor. The driver of the 'tractor testified that as he reached a point approximately. 20 feet south of this cement culvert going at a speed of one and a half to one and three quarters miles per hour he gradually pulled over to go into the road around the culvert and that after he had gotten the tractor through the culvert this truck coming southward at an excessive rate of speed of 35 to 40 miles an hour struck the tractor and then glanced over and caught its rear axle on the western bulkhead.”
“The driver of the truck, on the other hand, states that as he was approaching this culvert the weeds along the shoulder obscured the bulkhead and that he thought at that time that he had room to pass, that as he reached a point forty or fifty feet from the tractor it suddenly turned direct *393 ly across- the road and that he .cut out to . the right to miss it and struck this bulkhead.”
“Without discussing in detail - the testimony of the various witnesses, the court will merely state that it believes the evidence establishes the accident to have happened as follows:
“That this road was under construction beginning at a point just outside of Winns-boro and that a sign had been placed there warning all users of the road that it was under construction and cautioning them to drive with care; that the driver of the Bennett truck was driving southward on this road at a speed of approximately 25 to 30 miles per hour; that he did not slacken or slow up until he was very close to the tractor and grader because he thought he could pass on the shoulder to his right; that he would have completed this maneuver successfully except for the narrow culvert with its ..obscure bulkheads and narrow passage, and that he first struck the tractor,' which was occupying approximately two-third's of the blacktopped portion of the road, which had itself already passed through the culvert, with the front wheels of the following grader in between the two bulkheads, and thereafter he caught his rear axle on' the protruding bulkhead all of which resulted in' extensive damages' to the truck herein sued upon.”
From this finding of facts the District Court concluded: “The court is of the further opinion that the driver of the tractor was guilty of gross negligence for the following reasons: He saw this truck approaching, knew that there was not room for them to pass each other on the culvert with safety; he knew that the bulkheads were overgrown with weeds'making it difficult for the approaching truck driver to see them, and knowing all this he proceeded straight on getting over the center line of the road so as to cover a portion of the western traffic lane and force the approaching truck to get over on the shoulder. Common prudence required him to wait until the truck had passed before proceeding into and across the culvert. The fact that the accident happened after the tractor h'ad passed through the two bulkheads and over the culvert is of no» moment, because it was necessary for him. to keep-.it beyond the .middle of the. road, and crowd approaching traffic over onto the shoulder until the grader, -which was approximately 30 feet in length, began to clear the culvert, due to the crooked tongue which made it follow some feet to the right, of the vehicle pulling it.”
We do not agree with this conclusion for the reason that visibility was good; the road was straight'and it is shown that at the time the operator of the tractor grader, first began his gradual swing out into the road in order' to pass between the bulkheads on the culvert the truck- was between a -half and three quarters of a mile away, and there was no rqason why he should have waited.for this truckto have passed before attempting to go across the. culvert. At'least, there was not as much reason, for-him to wait for the truck as it was for the truck to slow down sufficiently or to stop until the grader had passed through the culvert and the truck could safely proceed, for at the time of the collision the tractor had successfully passed over -the culvert a distance of ten feet and. the front wheels of the grader were between the bulkheads of the culvert. After the accident the tractor grader remained in the same position on the road as at the time of the accident and traffic passed safely to the left and on across this culvert. Furthermore, the driver of this truck had made a prior trip along this route and there was no reason why he should not have known that the bulkheads were there on the culvert. There was no reason why he should not have seen this tractor grader, in the highway crossing this culvert. He did not slow down nor stop.' He intended to pass and could have passed had he properly driven his truck. The tractor grader did not suddenly pull to its left in front of the truck. Had the driver of the truck slowed down so as to bring it under control or stopped and waited for the tractor grader to clear the culvert, there would have been no accident.
The-trial judge, in his written reasons for judgment practically states that the truck driver- was guilty of negligence con *394 tributing to the accident when he said: “Defendants argue ■ strenuously that the truck driver was likewise guilty of negligence directly contributing to the accident. There is considerable merit to this for even though his speed was only 25 to 30 miles per hour he was traveling on a road under construction, drivers on which were not only warned by signs to that effect, but it was obvious from the work of this very tractor-grader. He should have observed this big machine pulling out into the road, brought his vehicle under control as he approached it, or even to a complete stop, if necessary.”
The trial judge stated, however, that the serious question was whether contributory negligence had been properly pleaded and, if so, whether there is a sufficiency of allegations bearing on thd employer-employee relationship which, would make the present plaintiffs responsible for the negligence of the driver of the truck. The trial court held that while the allegations were sufficient as to contributory negligence they were insufficient upon which to allow imputation of this negligence to the plaintiff, and having held that the defendant was guilty of negligence rendered judgment in favor of the plaintiff.
We are of the opinion that under the facts in this case the operator of the defendant’s tractor grader was not guilty of any negligence which was a proximate cause of the accident, but, on the other hand, the negligence of plaintiff’s truck driver was the sole and only proximate cause of the accident because of his failure to heed the warning signs' at the beginning of the project with reference to speed, the fact that the highway was under construction and he could and' should have anticipated obstructions on the highway and he was, therefore, proceeding at his own risk, and he did not keep a proper lookout nor did he have his machine under proper control. There was no negligence on the part of the operator of the tractor-grader in gradually coming out into the highway to cross this chlvert when the truck was one-half to three-quarters of a mile away, even if such a passage necessitated using more than half of the road, for, as stated, if the driver of the truck had slowed his speed so as to bring the truck under control he could have safely passed the tractor without striking it even though he did not have half the width of the road, and there was no reason why he should not have brought his truck to a stop until the tractor and grader had successfully completed the passage between the bulkheads of the culvert.
It is therefore, ordered that the judgment of the District Court be reversed and plaintiff’s suit dismissed at his cost.